IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs December 9, 2020

**WINFORD PAUL WILHOITE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Maury County**
**No. 25743     Stella L. Hargrove, Judge**

_____

**No. M2019-02198-CCA-R3-PC**

_____

In 2017, the Petitioner, Winford Paul Wilhoite, pleaded guilty as charged in case number 25743 to possession with intent to sell 0.5 grams or more of methamphetamine, simple possession of Lortab, possession of drug paraphernalia, criminal impersonation, and driving on a revoked license (second offense).[1] See Tenn. Code Ann. §§ 39-17-434, 39-17-418, 39-17-425, 39-16-301, 55-50-504. Following a sentencing hearing, the trial court imposed an effective sentence of ten years. Thereafter, the Petitioner filed a petition for post-conviction relief, alleging, in part, that he received ineffective assistance of counsel. Counsel for the Petitioner was appointed, and an amended petition was filed. The post-conviction court denied relief, and the Petitioner appeals. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., joined. ALAN E. GLENN, J., not participating.

John M. Schweri, Columbia, Tennessee, for the Petitioner, Winford Paul Wilhoite.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Brent A. Cooper, District Attorney General; and Adam Davis, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

---

[1] The same day, the Petitioner also pleaded guilty as charged in case number 26127 to simple possession of methamphetamine and violation of the seatbelt law. See Tenn. Code Ann. §§ 39-17-434(b), 55-9-603. The trial court ordered the sentences for these misdemeanor convictions served concurrently to the sentences in case number 25743. This appeal concerns only the convictions in case number 25743.

In May 2017, the Petitioner was indicted by the Maury County Grand Jury in Count 1 for possession with intent to sell 0.5 grams or more of methamphetamine, in Count 2 for simple possession of Lortab, in Count 3 for possession of drug paraphernalia, in Count 4 for criminal impersonation, and in Count 5 for driving on a revoked license (second offense).

At the plea submission hearing, the Petitioner indicated his desire to enter "open" guilty pleas to all five counts as a Range I offender, with the trial court to determine his sentences following a sentencing hearing. The court informed the Petitioner of the rights he was waiving by entering his guilty pleas, including his right to a trial by jury, wherein he could confront and cross-examine the State's witnesses and call witnesses on his behalf, and the Petitioner acknowledged the rights he was waiving by pleading guilty. The Petitioner also stated at this hearing that he was fully satisfied with trial counsel's representation of him. The trial court informed the Petitioner that the State had agreed that he would be sentenced as a Range I offender, despite his prior felony convictions, which meant that he faced a sentence of eight to twelve years for the count charging him with possession with intent to sell methamphetamine. At the request of the court, trial counsel provided the following factual basis for the Petitioner's guilty plea to Count 1, his only charged felony:

> Your Honor, on March 11th of 2017, [the Petitioner's] vehicle was stopped outside his residence by Officer Landon Barber for a traffic offense. Upon discussions with [the Petitioner] and . . . a search of his person and vehicle, there was discovered a felony amount of meth[amphetamine], over point five grams . . . .
>
> The officers had some difficulty in pulling up [the Petitioner's] driving record because he did not give them a full and complete name at the time, which would go to criminal impersonation.
>
> The methamphetamine at the time was packaged in two separate bags and that would be the basis for the resale charge.

The Petitioner acknowledged that this factual basis was correct. After explaining to the Petitioner that the felony conviction for possession with intent to sell methamphetamine could be used to increase punishment for offenses in the future, the trial court determined that the Petitioner had entered his guilty pleas "freely, voluntarily, knowingly, and intelligently, upon advice of counsel" before accepting the pleas.

At the January 19, 2018 sentencing hearing, the trial court specifically referenced the presentence investigation report, which showed that the Petitioner admitted to the arresting officer that "he sells meth[amphetamine] to help out with providing for his family" and that he "buys [the methamphetamine] online and gets it shipped in from Colorado." The presentence investigation report also showed that the Petitioner's criminal history included felony convictions for aggravated assault and burglary, and two felony convictions for theft. At the conclusion of this hearing, the trial court sentenced the Petitioner as a Range I, standard offender to concurrent sentences of ten years for Count 1, eleven months and twenty-nine days for Counts 2, 3, and 5, and six months for Count 4, for an effective sentence of ten years in prison at thirty percent release eligibility.

On January 18, 2019, the Petitioner timely filed a pro se petition for post-conviction relief, asserting a multitude of claims including ineffective assistance of counsel. Thereafter, the Petitioner was appointed counsel, who filed an amended petition incorporating the first petition and alleging, in part, that trial counsel provided ineffective assistance by encouraging the Petitioner plead guilty without conducting an appropriate investigation.

At the post-conviction hearing, trial counsel, an assistant public defender, testified that she was appointed to represent the Petitioner in general sessions court. She stated that just prior to the preliminary hearing, the Petitioner told her he did not want the public defender's office to represent him because "he was trying to create a conflict so that he could get a private attorney." Trial counsel explained that after she was able to get the Petitioner's probation violation, which stemmed from these charges, dismissed in circuit court, the Petitioner asked her to continue representing him.

Trial counsel asserted that she and the Petitioner discussed the weight of the drugs that were found in his possession at the time of his arrest, stating:

> I remember having a conversation with [the Petitioner] in the courtroom. I think he may have thought there was something about the weight, . . . not all of it being methamphetamine. They thought it was all methamphetamine; some was MDMA. I thought at the time that . . . since he was charged for [possession of methamphetamine] with resale, that pursuing the MDMA would have been an exercise in futility because it is a Schedule I [drug] and not probatable, but I do recall having a conversation [about] that and [the Petitioner] having concerns about that.

Trial counsel stated that while she did not have the drugs in this case independently tested, the lab report from the Tennessee Bureau of Investigation (TBI), which she received during discovery, included weights for each of the drugs. She said that she routinely copies all discovery for her clients and that "to the best of [her] knowledge, [the Petitioner] received a copy [of this lab report] and saw the results[,]" which included a separate weight for the methamphetamine.

Trial counsel said that she and the Petitioner also discussed his potential sentence and that the Petitioner knew he could be classified as a Range II offender if he proceeded to trial. However, she said that during plea negotiations, the State agreed to allow the Petitioner to enter "open" guilty pleas to the charges as a Range I offender and then be sentenced by the trial court.

Trial counsel stated that she argued for a ten-year sentence at the sentencing hearing because that sentence enabled the Petitioner to be eligible for probation. She added:

> I think someone with [the Petitioner's] record, . . . in my opinion and in my strategy and trying to get him probation, anything less than a full sentence, that acknowledging the fact that there is a dead horse in the room, you can't get around that, acknowledging the fact that he had a record but he helped the police and he did this and this. If he got some jail time but not [the] full ten years, to me, that would have been a victory. And I thought it was a little futile to argue eight years, but that's . . . my opinion as an attorney.

In addition, trial counsel said the Petitioner's sentencing hearing transcript showed that she argued for "a sentence of Community Correction[s] with one year to serve, split confinement."

Trial counsel said that she reviewed the video recording of the traffic stop and determined that the officer had reasonable suspicion to stop the Petitioner. She also reviewed the TBI Official Forensic Chemistry Report, which was admitted as an exhibit and provided that the 3,4-Methylenedioxymethamphetamine (MDMA) weighed 0.44 gram, that the methamphetamine weighed 0.63 gram, and that one of the two tablets recovered from the Petitioner was hydrocodone. She said there was never an issue about weight of the MDMA being added to the methamphetamine to make the weight of the methamphetamine more than 0.5 grams. Trial counsel noted that "[the Petitioner] made some . . . statements to I think Officer Barber that he was selling [methamphetamine] because he wouldn't make ends meet and had children to support." She explained that the weight of the methamphetamine, along with the Petitioner's admission to police, was more

than enough for the State to prove that the Petitioner was guilty of possession with intent to sell 0.5 grams or more of methamphetamine.

Trial counsel stated that before the Petitioner entered his guilty pleas, she explained to the Petitioner and his wife that if the Petitioner proceeded to trial, he could receive a sentence of twelve to twenty years, but if the Petitioner entered guilty pleas as a Range I offender pursuant to the State's offer, he would face a sentence of eight to twelve years and that "[a]nything that was ten years or less was eligible for probation." She also informed them that she would argue for some mitigating factors at the sentencing hearing and that if the Petitioner decided to reject the offer and proceed to trial, he could testify or choose not to testify. During this discussion, the Petitioner and his wife agreed that "it would be better to [plead guilty and] set the sentencing hearing off until January."

The Petitioner also testified at the post-conviction hearing. He said he informed trial counsel that he wanted a new attorney after she told him that he could not win at trial and presented him with the State's offer of ten years. The Petitioner said he only agreed to allow trial counsel to continue representing him when he was unable to hire a private attorney and believed he had no other option. He said trial counsel appeared at his home one week prior to his trial and informed him that she could not "beat" his charges but that if he entered guilty pleas, he could stay out of jail until after Christmas, and the Petitioner agreed to plead guilty. The Petitioner acknowledged that trial counsel reviewed the plea process with him, that she explained the rights he was waiving by entering his guilty pleas, and that she discussed the fact that he might not receive probation at the sentencing hearing. He further acknowledged that trial counsel told him he could face Range II sentencing, which would require him to serve twelve to twenty years, if he proceeded to trial rather than entering "open" guilty pleas as a Range I offender.

The Petitioner asserted that the weight for the methamphetamine was "wrong" because "the weight was added together and weighed within the bags on the scene." He said he observed the police weighing all the drugs inside the bags on the hood of their patrol car. At the conclusion of the Petitioner's testimony, the trial court stated, "[F]or the past 42 years, it is this Judge's understanding that TBI always separates the product from the bag when they weigh it[,]" and then asked, "Do you have any evidence to the contrary?[,]" and the Petitioner replied, "No, ma'am."

On June 28, 2019, the post-conviction court entered an order denying relief. In it, the court made the following findings of fact and conclusions of law:

> The Court finds that [trial counsel] fully investigated this case and shared all discovery with Petitioner prior to him entering his plea. The record reflects that Petitioner was satisfied with her continuing representation, from

the time he waived a preliminary hearing to open plea and sentencing. The Court finds that [trial counsel] advocated for a probable sentence and/or split confinement in the face of Petitioner's felony criminal history.

The Court finds that Petitioner fails to establish a reasonable probability that, but for the alleged errors of his counsel, he would not have entered the plea and would have insisted on going to trial. . . .

The Court finds that Petitioner fails to establish a reasonable probability that, but for counsel's errors that he alleges, the result of the proceedings would have been different. Indeed, the outcome could have been worse, upon a range notice by the State and a conviction by a jury of the indicted felony charge.

The Court finds that its colloquy with Petitioner substantially complies with the litany of constitutional rights mandated by Boykin[], and Johnson v. State, 834 S.W.2d 922 (Tenn. 1922).

The Court finds that Petitioner received effective assistance of counsel. Petitioner had excellent representation by an experienced and very thorough and conscientious attorney. [Trial counsel] protected and safeguarded Petitioner's rights at every stage.

The Petition has no merit.

The Court finds that Petitioner fails to carry his burden of proof that he is entitled to Post-Conviction Relief.

On December 17, 2019, this court granted the Petitioner permission to file an untimely notice of appeal, and considered the Petitioner's notice of appeal as timely filed on the same date.

## ANALYSIS

The Petitioner argues that trial counsel provided ineffective assistance. Specifically, he asserts that trial counsel "fail[ed] to properly investigate beyond the facts as presented to her by law enforcement," "fail[ed] to prepare any type of defense," and failed to present him with "the option to testify and/or call witnesses on his behalf." He claims that but for trial counsel's errors, he would not have entered his guilty pleas and would have proceeded to trial, where he insists he would have been convicted only of simple possession of methamphetamine. The State counters that the post-conviction court properly denied

- 6 -

relief. We conclude that the Petitioner has failed to establish that trial counsel provided ineffective assistance.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Id. § 40-30-110(f); see Tenn. Sup. Ct. R. 28, § 8(D)(1); Nesbit v. State, 452 S.W.3d 779, 786 (Tenn. 2014). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

A claim for post-conviction relief based on alleged ineffective assistance of counsel presents a mixed question of law and fact. Mobley v. State, 397 S.W.3d 70, 80 (Tenn. 2013) (citing Calvert v. State, 342 S.W.3d 477, 485 (Tenn. 2011)). This court reviews "a post-conviction court's conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness." Whitehead v. State, 402 S.W.3d 615, 621 (Tenn. 2013) (citing Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Calvert, 342 S.W.3d at 485). However, a post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. Calvert, 342 S.W.3d at 485 (citing Grindstaff, 297 S.W.3d at 216; State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)). "Accordingly, appellate courts are not free to re-weigh or re-evaluate the evidence, nor are they free to substitute their own inferences for those drawn by the post-conviction court." Whitehead, 402 S.W.3d at 621 (citing State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001)). "As a general matter, appellate courts must defer to a post-conviction court's findings with regard to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." Id. (citing Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999)).

The right to effective assistance of counsel is protected by the United States Constitution and the Tennessee Constitution. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936

(Tenn. 1975)).  To establish prejudice in the context of a guilty plea, a petitioner must show that, but for counsel's errors, the petitioner would not have entered his guilty plea and would have proceeded to trial.  Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).  "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim."  Goad, 938 S.W.2d at 370.

In assessing an attorney's performance, we "must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Burns, 6 S.W.3d at 462 (citing Strickland, 466 U.S. at 689).  In addition, we must avoid the "distorting effects of hindsight" and must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Strickland, 466 U.S. 689-90.  "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant."  Id. at 688-89.  However, "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'"  House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

Here, the Petitioner claims, in part, that although trial counsel reviewed the lawfulness of his stop, she failed to conduct "any real investigation" beyond the facts as presented to her by police and failed to prepare any type of defense.  He asserts that had counsel properly prepared a defense, there is a reasonable probability that he would have been convicted of the lesser included offense of simple possession of methamphetamine, particularly in light of the "very small amount of controlled substances, the lack of scales or large amounts of money, and the failure of the police (and defense counsel) to investigate."  The Petitioner maintains that because of trial counsel's ineffectiveness, he entered "open" guilty pleas to all of his charges, even though he could have gone to trial, where the State would have been required to meet its burden of proof and he would have had the opportunity to present a defense.  He states that "[t]he only small concession trial counsel procured for [him] in this case was that he would not face a potential multiple offender (range two) sentence if convicted as charged."

As support for his ineffective assistance of counsel claim, the Petitioner argues that the State's factual basis for Count 1 showed an "overly simplistic approach to the felony case."  He notes that the prosecutor stated that "a felony amount" of methamphetamine, more than 0.5 grams, had been recovered from the Petitioner before asserting that "[t]he methamphetamine at the time was packaged in two separate bags and that would be the basis for the resale charge."  The Petitioner recognizes, pursuant to Tennessee Code Annotated section 39-17-419, that "[i]t may be inferred from the amount of a controlled

substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." However, he asserts that this statutory presumption "does not mean that over .5 gram of methamphetamine is 'a felony amount'" and that the charged offense was "possession with the intent to sell, not merely possessing over 0.5 gram." Moreover, the Petitioner, while acknowledging that he "allegedly" made statements admitting that he sold methamphetamine, asserts that the State never corroborated his alleged statements to police and contends that the "may be inferred" language in Code section 39-17-419 "is a far cry" from proof beyond a reasonable doubt that he possessed the methamphetamine with the intent to sell it.

At the post-conviction hearing, trial counsel testified that aside from evidence regarding the weight of the methamphetamine, there was also evidence that the Petitioner admitted to police that he sold methamphetamine. The trial court, at the Petitioner's sentencing hearing, also noted that the Petitioner had admitted to the arresting officer that "he sells meth[amphetamine] to help out with providing for his family" and that he "buys [the methamphetamine] online and gets it shipped in from Colorado." The record clearly shows that the Petitioner had more than .5 grams of methamphetamine, that his methamphetamine was packaged in two different bags, and that he admitted to police that he regularly sold methamphetamine. Despite the overwhelming evidence of the Petitioner's guilt, trial counsel obtained a favorable offer allowing the Petitioner to enter guilty pleas to the charged offenses as a Range I offender, rather than a Range II offender, which substantially reduced the sentence he faced and allowed for the possibility of a probationary sentence. The record also shows that the Petitioner, after being advised by trial counsel and considering the evidence against him, wisely chose to enter guilty pleas pursuant to this offer rather than proceed to trial, where he most likely would have been found guilty and given a greater sentence as a Range II offender. Accordingly, the Petitioner has failed to prove that trial counsel's performance was deficient. Moreover, we agree with the State that the Petitioner has failed to explain what investigation he believes trial counsel should have conducted or what such an investigation would have revealed and has failed to identify any legitimate defenses trial counsel could have raised in his case. Consequently, the Petitioner has also failed to prove that trial counsel's performance was prejudicial. Because the Petitioner has failed to establish that that trial counsel provided ineffective assistance regarding these claims, he is not entitled to relief.

Lastly, as to the Petitioner's claim that trial counsel failed to present him with "the option to testify and/or call witnesses on his behalf," we note that although the Petitioner generally alleged ineffective assistance of counsel, he failed to specifically raise any claim in his post-conviction petition or amended petition about counsel's failure to advise him of his right to testify or call witnesses. Moreover, the record shows that the Petitioner failed to raise this claim at the post-conviction hearing, and, consequently, the post-conviction

court never addressed it in its order denying relief. Accordingly, we conclude that this issue is waived. See Walsh v. State, 166 S.W.3d 641, 645 (Tenn. 2005) ("Issues not addressed in the post-conviction court will generally not be addressed on appeal."); Cauthern v. State, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) ("[A]n issue raised for the first time on appeal is waived.").

Waiver notwithstanding, the Petitioner admitted at the post-conviction hearing that trial counsel explained the guilty plea process to him and reviewed the rights he was waiving by entering his guilty pleas. Trial counsel testified that she told the Petitioner if he decided to reject the State's offer, he could proceed to trial, where he could decide whether to testify or not testify. At the plea submission hearing, the trial court informed the Petitioner of the rights he was waiving by entering his guilty pleas, including his right to a trial by jury, wherein he could confront and cross-examine the State's witnesses and call witnesses on his behalf, and the Petitioner acknowledged the rights he was waiving by pleading guilty to the charged offenses. Because the Petitioner has also failed to establish that trial counsel was ineffective with regard to this claim, he is not entitled to relief.

## CONCLUSION

The judgment of the post-conviction court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE